802 F.2d 459
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert A. OWENS, Individually; Ann Arbor
Datsun-Subaru-Fiat, Inc., formerly known as Bob
Owens Datsun, Inc., Plaintiffs-Appellants,
v.
SUBARU OF AMERICA, INC.; Great Lakes Subaru, Inc., formerly
known as George Byers Sons, Inc., Defendants-Appellees.
 No. 85-1257.
 United States Court of Appeals, Sixth Circuit.
 Aug. 28, 1986.
 
 Before JONES and NELSON, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 
 
 1
 PER CURIAM. Robert Owens appeals the summary judgment for Subaru of America and Great Lakes Subaru (hereinafter collectively "Subaru") in this Michigan tort claim for wrongful interference with a business relationship. On consideration of the record, the briefs and the oral arguments, we affirm the judgment of the district court.
 
 
 2
 Robert Owens owned a Datsun dealership in Ann Arbor, Michigan. The dealership was having financial trouble and Owens was in danger of f;?:oing out of business. He was in an "out of trust" status in regard to his payments to the bank on his major business loan, which was secured in part by the dealership property and goods.
 
 
 3
 Owens discovered that there was a local dealership that might want to merge with his Datsun dealership. Owens contacted this dealership, Overseas Imports (hereinafter "Overseas"), which sold both Fiat and Subaru automobiles. He suggested a merger. Overseas entered negotiations with Owens, and the two dealerships reached accord and planned to merge. In anticipation of the merger, Owens formed a new corporation, Ann Arbor Datsun-Subaru-Fiat, Inc., of which he would be 51% owner under the merger agreement. It was essential that the new dealership obtain a franchise from Subaru. Subaru engaged in discussions with Owens and Overseas, and processed the application for a franchise through several stages of approval, but ultimately decided not to approve the merger and denied a franchise to the new entity. Subaru informed its dealer, Overseas, that it could continue to be a Subaru dealer, but that, if Overseas merged with Owens, Subaru would not aUow Overseas to transfer its franchise to the new entity.
 
 
 4
 Owens' bank, Manufacturers National Bank, had been cooperating in the new venture and had approved the merger. When Subaru informed the bank of its decision, however, the bank im mediately asserted its right to seize the goods and property of Owens' dealership because Owens was, by then, in default. Overseas continued to be a Subaru dealer as before. Owens instituted suit against Subaru in United States District Court, basing federal jurisdiction on a "Dealers-Day-In-Court" statute, the Automobile Dealer Suits Against Manufacturers Act, 15 U.S.C. Sec. 1221, et seq. (1982). He included state claims under a Michigan "Dealers-Day-in-Court" statute, Mich.Comp.L.Ann. Sec. 445.1506 et. seq. (1985 Supp.), and under the common law tort of intentional interference with a business relationship. Federal jurisdiction of the state claims was based on pendant jurisdiction or, alternatively, on diversity jurisdiction. Owens pleaded several other theories, but they are irrelevant to this appeal. Overseas was not a party. The district court entered summary judgment for the defendants, Subaru of America and Great Lakes Subaru. Owens appeals the judgment on only one of the counts, intentional interference with a business relationship.
 
 
 5
 Although Owens does not appeal the judgments on the statutory claims, it is necessary to discuss the statutes briefly in order to explain his related arguments in regard to his tort theory. The federal and Michigan statutes apply to ongoing frtinchisor-franchisee relationships and do not apply to the relationship between a franchisor, such as Subaru, and a potential franchisee, such as Owens' new corporation. The federal statute sets forth a "good faith" standard of conduct by manufacturers in regard to "terminating, canceUing or not renewing the franchise" of a dealer. 15 U.S.C. Sec. 1222 (1982); see also id. Sec. 1221(e) (defining "good faith"). Similarly, the Michigan -statute provides that a manufacturer or distributor shall not "unreasonably withhold consent to the sale, transfer, or exchange of the dealership to a qualified buyer capable of being licensed as a new motor vehicle dealer in this state." Mich.Comp.L.Ann. Sec. 445.1574(1)(h)(i).
 
 
 6
 The district court found, correctly we believe, that Owens and his planned new dealership had no standing to sue Subaru under the statutes because neither Owens nor the new corporation had a dealer relationship with Subaru. Owens argues, however, that the court should have considered, on its merits, his argument that a violation of the statute(s) by Subaru against its dealer Overseas would prove that Subaru improperly interfered with the prospective contractual relationship between Overseas and Owens, thus committing an actionable tort under Michigan common law.
 
 II. Tort Theory
 
 7
 The Michigan courts recognize the tort of interference with business relationship as presented in the Restatement of Torts. See Trepel v. Pontiac Osteopathic Hospital, 135 Mich.App. 361, 374 (1984). The Restatement describes this tort as follows:
 
 
 8
 One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of:
 
 
 9
 (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or,
 
 
 10
 (b) preventing the other from acquiring or continuing the prospective relation.
 
 
 11
 4 Restatement (Second) of Torts, Sec. 766B, p. 20 (1979) (emphasis added). The Michigan courts have defined the "improper" element in several ways. Drawing the line is not always easy, because a certain degree of callous self-interest and aggressive interference is permissible. See e.g., Trepel, 135 Mich.App. at 375-77. For example, a plaintiff may not bring suit because a competitor lured his customers away by offering them a better deal. E.g., Bahr v. Miller Brothers Creamery, 365 Mich. 415 (1961); Feldman v. Green, 138 Mich.App. 360 (1984). Consequently, Michigan courts have held that "improper" means "illegal, unethical, or fraudulent," see, e.g., Trepel, 135 Mich.App. at 374, or have required that the interference be unjustifiable and malicious. E.g., Feldman, 138 Mich.App. at 370-71 & n.1. Defendants may prevail by showing just cause or demonstrating that the injury to the plaintiff was merely an incident of competition. Id., see also Trepel, 135 Mich.App. at 376.
 
 
 12
 Owens alleges that Subaru acted unjustifiably, illegally and unethically. He argues that Subaru violated the automobile dealer statutes when it unjustifiably denied permission to Overseas to transfer its franchise to the new dealership, and this violation constitutes the illegal or unethical conduct required by the tort claim. Unlawful or unethical conduct by the defendant toward a third person, Owens contends, is actionable by the intended contractual party under the theory of subsection 766(a) of the Restatement. Owens characterizes Subaru's conduct toward Overseas as unreasonable and coercive in regard to Overseas, arguing that Subaru, by forcing Overseas to forego its planned relationship with Owens, improperly interfered with the prospective contractual relation between Overseas and Owens.
 
 
 13
 The district court concluded that Owens could make no use of the statutes, direct or indirect, because he was not a proper plaintiff under the acts. We believe this conclusion was erroneous. The defendant's liability here is not based on the statute but on a common-law theory of tortious conduct. One of the initial tasks in a case such as this is to ascertain what is ethical and legal in the particular business setting. We find that the automobile dealer statutes should have been considered insofar as they demonstrate the standard of fair dealing and lawful conduct in the industry. Owens should have been allowed to make use of the statutory standards of conduct in his attempt to demonstrate that Subaru's conduct in preventing the completion of the merger was "improper" under the state's tort law.
 
 
 14
 We find, however, that this error was harmless. Even under the statutory standards, Owens has not presented factual aUegations that, when viewed favorably, tend to prove bad faith or unreasonableness. His allegations of bad faith are largely conclusory. Even if we accept as true that his planned dealership would probablv have been profitable to all parties concerned, it is undisputed that Owens and his current dealership were in severe financial trouble. The standards of proper conduct do not require that a business entity always enter a relationship that is likely to be profitable; they only require that improper pressure or methods of persuasion not be used. Here, the most that Owens can demonstrate is that Subaru was excessively cautious and self protective. Such conduct does not appear tortious to this court, even under the standard of business ethics relected in the statutes.
 
 
 15
 Accordingly, we AFFIRM the judgment of the district court.